**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WAYNE LEE JOHNSON,

     Movant,

v.                                                      Case No. 8:24-cv-2374-WFJ-AEP
                                                     Crim. Case No. 8:19-cr-242-WFJ-AEP

UNITED STATES OF AMERICA,

     Respondent.

_____/

## ORDER

Wayne Lee Johnson is a federal prisoner serving a 180-month sentence for several drug-trafficking offenses. He moves *pro se* to vacate his convictions under 28 U.S.C. § 2255. (Civ. Docs. 5, 6). The United States responded to the motion, and Mr. Johnson filed a reply. (Civ. Docs. 13, 14). After careful review, the motion is **DENIED**.

### I.    Background

On the evening of April 29, 2019, Mr. Johnson sold opioids to E.V. (Crim. Doc. 97 at 15-16). E.V. had bought opioids before, but they "were typically in a brownish powder" consistent with heroin. (*Id.* at 16). This time, the opioids were "white/brown," an appearance "consistent with . . . fentanyl." (*Id.*) Soon after the sale, E.V. texted Mr. Johnson, "I'm nervous to put it in my body. It doesn't look right or taste right. Tastes like baking soda. That could kill me if I inject it." (*Id.*) Mr. Johnson replied, "No it's legit." (*Id.*) E.V. overdosed on the opioids and had to be revived through the administration of

Narcan. (*Id.* at 15). She identified Mr. Johnson as the person who had sold her the drugs. (*Id.*)

After E.V.'s overdose, law enforcement conducted three controlled purchases of fentanyl from Mr. Johnson. (*Id.* at 16-17). On May 2, 2019, Mr. Johnson sold an undercover detective .64 grams of a mixture of fentanyl and acetyl fentanyl. (*Id.* at 17). Four days later, he sold the detective .74 grams of a mixture of fentanyl, acetyl fentanyl, fluoroisobutyryl fentanyl, and heroin. (*Id.*) Two days after that, Mr. Johnson agreed to meet the detective at an Advanced Auto Parts for another sale. (Crim. Doc. 111 at 7). When the detective arrived, Mr. Johnson "attempted to throw away the controlled substances"— specifically, 1.6 grams of a mixture of fentanyl, acetyl fentanyl, fluoroisobutyryl fentanyl, and heroin. (Crim. Doc. 97 at 17). After his arrest, Mr. Johnson admitted to law enforcement that he had sold opioids to the detective. (*Id.*) He said that he "us[ed] other people to pick up the heroin on his behalf from his source of supply." (*Id.*)

Mr. Johnson was charged with conspiring to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; distributing and possessing with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and possessing with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Crim. Doc. 45). The E.V.-related counts alleged that the use of controlled substances "resulted in . . . serious bodily injury." (*Id.* at 1-2). Because of his prior felony drug convictions, Mr. Johnson faced a mandatory life sentence for the E.V.-related counts. (Crim. Doc. 80; Crim. Doc. 111 at 28; *see also* 21 U.S.C. § 841(b)(1)(C)).

Mr. Johnson ultimately pleaded guilty to all counts, with the removal of the allegation that his conduct had resulted in serious bodily injury. (Crim. Doc. 97). As a result, he was no longer subject to a mandatory life sentence. As part of the plea agreement, however, Mr. Johnson consented to an upward sentencing departure under USSG § 5K2.2. (*Id.* at 4). That provision allowed the Court to "increase the sentence above the authorized guideline range" if "significant physical injury resulted." USSG § 5K2.2 (2021). The parties agreed that "an upward departure" was "warranted" because the "relevant conduct" in this case "included the hospitalization of E.V. from the ingestion of controlled substances." (Crim. Doc. 97 at 4).

With a total offense level of 13 and a criminal history category of V, Mr. Johnson faced a guidelines range of 30 to 37 months' imprisonment.[1] (Crim. Doc. 111 at 28). The United States sought "a sentence of 262 months' imprisonment"; Mr. Johnson asked for 111 months' imprisonment. (Crim. Doc. 113 at 1; Crim. Doc. 114 at 15). The Court varied upward and sentenced Mr. Johnson to 180 months' imprisonment. (Crim. Doc. 127 at 35). The upward variance was warranted to account for the "physical injury that was involved" and the "significant amount of recidivism in [Mr. Johnson's] history." (*Id.* at 38). Mr. Johnson appealed, and his counsel filed an *Anders*[2] brief. (Crim. Docs. 121, 132). The Eleventh Circuit affirmed, ruling that its "independent examination of the entire record reveal[ed] no arguable issues of merit." (Crim. Doc. 132). Mr. Johnson then unsuccessfully

---

[1] Mr. Johnson's base offense level was 16, and he received a three-point reduction for acceptance of responsibility. (Crim. Doc. 111 at 8).

[2] *Anders v. California*, 386 U.S. 738 (1967).

sought certiorari review from the United States Supreme Court. (Crim. Doc. 135). This § 2255 motion followed. (Civ. Docs. 5, 6).

## II.    Legal Standards

Section 2255 allows a federal prisoner to "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). On collateral review, a petitioner "has the burden of proof and persuasion on all the elements of his claim." *In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016). This is "a significantly higher hurdle than would exist on direct appeal," *United States v. Frady*, 456 U.S. 152, 164-66 (1982), because "[w]hen the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence." *In re Moore*, 830 F.3d at 1272. "[I]f the Court cannot tell one way or the other" whether the petitioner's claim is valid, he has "failed to carry his burden of showing all that is necessary to warrant § 2255 relief." *Id.* at 1273.

Mr. Johnson alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Johnson must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Johnson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## III.   Discussion[3]

### A.   Ground One—Failure to Challenge Knowledge of Fentanyl

Mr. Johnson faults trial counsel for failing to "challenge whether he knew the substances he distributed contained fentanyl." (Civ. Doc. 6 at 9). According to Mr. Johnson, counsel "knew through attorney-client communications that [he] had no prior knowledge of fentanyl in the substances." (*Id.*) Mr. Johnson alleges that "evidence of lack of knowledge could have led to acquittal on the fentanyl charges or a more favorable plea agreement." (*Id.* at 10).

Counsel was not "deficient for failing to raise [this] meritless claim." *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). The statutes Mr. Johnson was charged with violating—§§ 841(a)(1), 841(b), and 846—"do not require the government to prove

---

[3] The United States argues that Mr. Johnson's § 2255 motion is untimely. (Civ. Doc. 13 at 6-9). Because the motion fails on the merits, the Court need not address timeliness. *See Day v. McDonough*, 547 U.S. 198, 205 (2006) (noting that AEDPA's statute of limitations "is not jurisdictional"); *Turner v. United States*, No. 22-12173, 2023 WL 5528719, at *2 (11th Cir. Aug. 28, 2023) ("Because we conclude that [the] [§] 2255 motion fails on the merits, we need not address the district court's alternative ruling about timeliness.").

a defendant's knowledge of a specific drug." *United States v. Gray*, 94 F.4th 1267, 1270 (11th Cir. 2024). For the substantive drug-trafficking offenses, the defendant "must knowingly possess, and intend to distribute, a controlled substance, but need not know which substance it is." *United States v. Colston*, 4 F.4th 1179, 1188 (11th Cir. 2021). Likewise, to obtain a conspiracy conviction, the government need not "prove that the defendant conspired to distribute a specific substance but is only required to prove that the defendant conspired to distribute a generic controlled substance." *United States v. Achey*, 943 F.3d 909, 914 (11th Cir. 2019). Mr. Johnson does not contend that he was unaware he sold a controlled substance. Nor could he. As part of his guilty plea, Mr. Johnson stipulated that he had sold "opioids" and used "other people to pick up . . . heroin on his behalf from his source of supply." (Crim. Doc. 97 at 17). Because Mr. Johnson "knew he possessed a controlled substance," his alleged lack of knowledge of fentanyl would have supplied no defense to the charges. *Gray*, 94 F.4th at 1271; *see also United States v. Swanson*, No. 21-10966, 2021 WL 5827760, at *1 (11th Cir. Dec. 8, 2021) (holding, in case involving §§ 841 and 846, that "the government was not required to prove that [defendant] knew that the controlled substance involved in his offense was fentanyl").

### B.    Ground Two—Alleged Misrepresentation of Expert Testimony

Mr. Johnson alleges that counsel "fraudulently induce[d]" his guilty plea by "materially misrepresenting purported expert testimony from Dr. Werner Spitz." (Civ. Doc. 6 at 11). It appears that Dr. Spitz was a potential defense expert on "causation and toxicology." (*Id.* at 12). Mr. Johnson offers no additional details about Dr. Spitz's proposed

- 6 -

testimony. Instead, he simply asserts that "had [he] known Dr. Spitz would not provide the promised exculpatory testimony, he would not have pleaded guilty." (*Id.*)

This claim fails for two reasons. First, it is conclusory. Mr. Johnson does not elaborate on counsel's alleged "misrepresent[ations]," nor does he provide any details about Dr. Spitz's proposed testimony. (*Id.* at 11-12). Mr. Johnson cannot obtain relief based on "conclusory allegations unsupported by specifics." *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001); *see also Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient."); *Rogers v. United States*, No. 1:16-cr-324-TWT-RGV, 2019 WL 9595352, at *4 (N.D. Ga. Jan. 14, 2019) (no deficient performance or prejudice where petitioner failed to "provide a summary of [witnesses'] expected testimony"), *adopted by* 2020 WL 4464647 (N.D. Ga. Aug. 4, 2020).

Second, Mr. Johnson cannot show prejudice. To establish prejudice in the context of a guilty plea, a defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, the defendant must "convince the court that a decision to reject [a] plea [] would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1265 (11th Cir. 2015).

Mr. Johnson fails to establish a "reasonable probability" that, had he known Dr. Spitz would not provide exculpatory testimony, he "would have insisted on going to trial." *Hill*, 474 U.S. at 59. To the contrary, the absence of favorable testimony would have made trial *less* attractive, not more. A defendant who learns that a purportedly helpful witness will not support his defense is, if anything, more likely to accept a plea than to proceed to trial. Regardless, as the factual summary above makes clear, the evidence against Mr. Johnson was strong. By pleading guilty, he received a sentence of 180 months' imprisonment rather than the mandatory life sentence he faced if he went to trial. In these circumstances, no "rational person would have rejected [Mr. Johnson's] plea bargain." *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (finding no *Strickland* prejudice where "plea bargain lowered [defendant's] sentence of imprisonment by eight years"); *see also Sierra v. Fla. Dep't of Corr.*, 657 F. App'x 849, 852 (11th Cir. 2016) (holding that, because petitioner had "no valid defenses, it would not have been rational . . . to have rejected the plea agreement and proceeded to trial").

## C.    Ground Three—Failure to Challenge "Scientific Evidence"

Mr. Johnson contends that counsel was deficient for "failing to challenge critical scientific evidence linking drug samples and establishing fentanyl content." (Civ. Doc. 6 at 12). According to Mr. Johnson, "multiple drug samples were seized but no evidence demonstrates proper chain of custody or scientific linkage between them." (*Id.* at 13). In addition, when E.V. was hospitalized, "blood was drawn but it was never tested." (*Id.*) Mr. Johnson alleges that had counsel "properly investigated and challenged the scientific

evidence through available procedural mechanisms, there is a reasonable probability that [he] would have proceeded to trial or negotiated a more favorable plea agreement." (*Id.*)

This claim fails because Mr. Johnson offers nothing to show that further investigation would have uncovered helpful evidence. As explained above, Mr. Johnson bears "the burden of proof and persuasion on all the elements of his claim." *In re Moore*, 830 F.3d at 1272. Mr. Johnson claims that "proper challenges to the evidence could have resulted in suppression or exclusion of critical proof," but he offers no support for this assertion. (Civ. Doc. 6 at 13). Instead, he merely speculates that additional investigation of "critical forensic evidence" would have borne fruit. (*Id.* at 14). "Speculation is insufficient to carry the burden of a . . . petitioner as to what evidence could have been revealed by further investigation." *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985); *see also In re Moore*, 830 F.3d at 1272 ("[A] movant has the burden of showing that he is entitled to relief in a § 2255 motion.").

### D.   Grounds Four and Seven—Failure to Challenge Guidelines Calculations[4]

Mr. Johnson was sentenced in July 2022, and the 2021 Guidelines Manual was used to calculate his offense level. (Crim. Doc. 111 at 7; Crim. Doc. 118). According to Mr. Johnson, counsel should have urged the Court to use the 2018 Guidelines Manual instead, allegedly because its provisions on "fentanyl analogues . . . would have resulted in a lower guideline range." (Civ. Doc. 6 at 15). Mr. Johnson appears to contend that the 2018

---

[4] In the section of his memorandum on Ground Four, Mr. Johnson repeats his claim that counsel was ineffective for "failing to challenge critical forensic evidence." (Civ. Doc. 6 at 14-15). The Court fully addresses that claim in its discussion of Ground Three.

Guidelines Manual applied to his case because the offense conduct took place in 2019. (*Id.* at 15-17).

Counsel was not obligated to raise this meritless argument. *See Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a meritless claim."). "Though courts typically apply the Guidelines in effect at the time of sentencing, the Ex Post Facto Clause prohibits the use of Guidelines issued after the offense that create a *higher* applicable sentencing range." *United States v. Maurya*, 25 F.4th 829, 836 (11th Cir. 2022). Under the 2021 Guidelines Manual—the one in effect at the time of sentencing—Mr. Johnson was held accountable for 3.1 grams of fentanyl analogue, yielding a base offense level of 16. (Crim. Doc. 111 at 8). If the Court had used the 2018 Guidelines Manual instead, the result would have been the same—3.1 grams of fentanyl analogue yielding a base offense level of 16. *See* USSG § 2D1.1(c)(12) (2018). Because the base offense level was the same regardless of which Guidelines Manual applied, counsel had no basis to raise an ex post facto challenge. *See United States v. Bell*, 112 F.4th 1318, 1343 (11th Cir. 2024) ("The Ex Post Facto Clause bars a defendant from being sentenced under a version of the guidelines that would provide a *higher* sentencing range than the version in place at the time of his criminal conduct."); *Smith v. United States*, No. 1:12-cv-1006-WKW, 2015 WL 438970, at *3 (M.D. Ala. Feb. 3, 2015) (no ex post facto violation where "the base offense level for [defendant's] crimes under the guidelines in effect at the time of his sentencing in 2009 was the same level [as it would have been] under the guidelines in effect when he committed his crimes in 2005").

Mr. Johnson separately faults counsel for failing to argue that "unknown fentanyl analogues" should have been excluded from the calculation of his base offense level. (Civ. Doc. 6 at 20-21). He contends that unspecified guidelines "amendments" required this outcome. (*Id.* at 20). The Court has not located any such amendment.[5] Regardless, Mr. Johnson cannot show prejudice because even if the allegedly "unknown" fentanyl analogues had been excluded, his base offense level would have remained the same.

According to Mr. Johnson, the "precise [fentanyl] analogues" that E.V. consumed were never identified. (*Id.*) But Mr. Johnson was also charged for his three sales to the undercover detective. And Mr. Johnson admitted that (1) the first sale involved .64 grams of a mixture of fentanyl and acetyl fentanyl (an analogue), (2) the second sale involved .74 grams of a mixture of fentanyl, acetyl fentanyl, fluoroisobutyryl fentanyl (another analogue), and heroin, and (3) the third sale involved 1.6 grams of a mixture of fentanyl, acetyl fentanyl, fluoroisobutyryl fentanyl, and heroin. (Crim. Doc. 97 at 17). Thus, even without the "unknown" opioids sold to E.V., Mr. Johnson could have been held responsible for 2.98 grams of fentanyl analogue based on his sales to the undercover detective. *See United States v. Rocher*, 795 F. App'x 716, 718 (11th Cir. 2019) ("Under the Guidelines, if a defendant sells a mixture of controlled substances, 'the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level'—

---

[5] The sole authority Mr. Johnson cites for the existence of the alleged amendments is "*United States v. Morales*, 981 F.3d 1288, 1294 (11th Cir. 2020)." (Civ. Doc. 6 at 20). No such case appears to exist. The pin cite for "*United States v. Morales*" leads to *Munoz v. Selig Enterprises., Inc.*, 981 F.3d 1265 (11th Cir. 2020), a case involving the Americans with Disabilities Act and the Family and Medical Leave Act. In any event, both the 2018 and 2021 Guidelines Manuals define "fentanyl analogue" as "any substance (including any salt, isomer, or salt or isomer thereof), whether a controlled substance or not, that has a chemical structure that is similar to fentanyl." USSG § 2D1.1(c), Note (J).

in this case, fentanyl [analogue]." (citing USSG § 2D1.1(c), Note (A))). And under either the 2018 or 2021 Guidelines Manual, 2.98 grams of fentanyl analogue yields a base offense level of 16—the same level applied to Mr. Johnson at sentencing. *Compare* USSG § 2D1.1(c)(12) (2018), *with* USSG § 2D1.1(c)(12) (2021). Therefore, Mr. Johnson suffered no prejudice from the failure to exclude the "unknown" fentanyl analogues from the guidelines calculation.[6] *See Duran v. United States*, 754 F. App'x 852, 857 (11th Cir. 2018) (no *Strickland* prejudice from failure to raise objection because even if objection had been made, defendant's "[g]uideline range would have remained unchanged").

### E.    Ground Five—Failure to Seek Competency Evaluation

Mr. Johnson contends that trial counsel was deficient for failing to "request a mental competency evaluation[] despite evidence of diminished capacity." (Civ. Doc. 6 at 17). At sentencing, Mr. Johnson presented testimony from Desiree Meaton-Francisco, a mental health counselor who performed a "psychosocial assessment" of Mr. Johnson. (Crim. Doc. 127 at 11-12). Ms. Meaton-Francisco stated that Mr. Johnson suffered from "[c]annabis use disorder, severe; opioid use disorder, severe; stimulant use disorder pertaining to cocaine, severe. And he met some of the criteria for PTSD but not full." (*Id.* at 14). She agreed that "the issues with Mr. Johnson's life [were] less related to mental health problems

---

[6] Mr. Johnson argues that counsel should have argued for "safety-valve consideration under 18 U.S.C. § 3553(f)." (Civ. Doc. 6 at 21). "The safety-valve provision . . . offers some defendants convicted of drug offenses an escape from otherwise applicable mandatory minimums." *Pulsifer v. United States*, 601 U.S. 124, 128 (2024). As a result of his guilty plea, Mr. Johnson was not subject to a mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(C). Therefore, the safety-valve provision did not apply to him. Regardless, Mr. Johnson would have been ineligible for safety-valve relief because he had more than four qualifying criminal-history points and several prior three-point offenses. (Crim. Doc. 111 at 9-20; *see also* 18 U.S.C. § 3553(f)(1)).

separate from addiction and [were instead] squarely focused on drug addiction." (*Id.* at 16). According to Mr. Johnson, "[t]he record demonstrates substantial evidence warranting [a] competency evaluation." (Civ. Doc. 6 at 17).

This claim fails for lack of prejudice. To show prejudice, Mr. Johnson must establish that "if his trial counsel had performed as he [suggests], there is a reasonable probability that the trial judge would have determined that [he] was incompetent to stand trial." *Oats v. Singletary*, 141 F.3d 1018, 1025 (11th Cir. 1998). The test for determining competence to stand trial is "whether a criminal defendant [1] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and [2] whether he has a rational as well as factual understanding of the proceedings against him." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

Mr. Johnson fails to demonstrate a reasonable probability that he "would have been found incompetent" had counsel requested a competency evaluation. *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 480 (11th Cir. 2012). He presents no evidence that such an evaluation would have shown that he lacked either "sufficient present ability to consult with his lawyer" or "a rational as well as factual understanding of the proceedings against him." *Drope*, 420 U.S. at 171. Moreover, although he suffered from substance use disorder and (potentially) PTSD, Mr. Johnson offers no evidence that his conditions "caused him to be confused and to lack understanding of the proceedings under the legal standard of competence." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992); *see also Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate

a present inability to assist counsel or understand the charges."). To the contrary, Mr. Johnson agreed during his plea colloquy that he was "clearheaded today and free from any drugs or alcohol or emotional distress that would impair [his] thinking." (Crim. Doc. 126 at 3).

On this record, Mr. Johnson fails to meet his burden of "affirmatively prov[ing] prejudice" from counsel's alleged mishandling of the competency issue.[7] *Strickland*, 466 U.S. at 693; *see also Cox v. Sec'y, DOC*, No. 2:11-cv-439-JES-UAM, 2013 WL 4734065, at *6 (M.D. Fla. Sept. 3, 2013) (no prejudice where petitioner "presented no evidence that" he "would have been found incompetent to proceed" and "nothing in the record indicate[d] that [he] was incompetent at the time of his trial").

### F.      Ground Six—Failure to Challenge Sentence Enhancement

As noted above, the United States initially intended to seek a mandatory sentence of life imprisonment under 21 U.S.C. §§ 841(b)(1)(C) and 851. (Crim. Doc. 80). That enhancement applies if a defendant with "a prior conviction for a felony drug offense" distributes a controlled substance and "death or serious bodily injury results from the use of such substance." 21 U.S.C. § 841(b)(1)(C). The United States filed a notice stating that it would rely on several prior drug convictions for the enhancement, including a 2009 conviction for felony possession of cocaine, two 2015 convictions for felony possession of

---

[7] It is unclear whether Mr. Johnson intends to assert a freestanding due process claim based on the Court's failure to *sua sponte* inquire into his competency. (Civ. Doc. 6 at 17-18). Any such claim fails because Mr. Johnson has not met his "burden of proving that objective facts known to the trial court were sufficient to raise a bona fide doubt as to [his] competency." *McNair v. Dugger*, 866 F.2d 399, 401 (11th Cir. 1989).

cocaine, and two 2015 convictions for sale or delivery of cocaine.[8] (Crim. Doc. 80 at 3). As a result of Mr. Johnson's guilty plea, the United States agreed to forgo the enhancement, and Mr. Johnson received a sentence of 180 months' imprisonment. (Crim. Doc. 127 at 6, 35).

Mr. Johnson nonetheless contends that counsel was ineffective for "failing to investigate and challenge the . . . enhancement's validity." (Civ. Doc. 6 at 19). He does not identify any basis to challenge the enhancement. (*Id.*). Instead, he simply asserts that counsel should have "investigate[d] potential challenges" to its applicability here. (*Id.*)

Mr. Johnson fails to meet his "burden of proof and persuasion" on this claim. *In re Moore*, 830 F.3d at 1272. As just noted, he offers no viable basis to challenge the enhancement. Regardless, the enhancement was properly supported by Mr. Johnson's prior convictions for felony possession of cocaine and sale or delivery of cocaine. *See, e.g.*, *Leaks v. United States*, No. 20-12538, 2024 WL 3650185, at *5 (11th Cir. Aug. 5, 2024) (defendant's "prior [Florida] cocaine convictions were 'felony drug offense[s]' and his [sentence] was properly enhanced . . . under [§] 841(b)(1)(C)); *Neloms v. United States*, No. 18-cr-80154, 2020 WL 5505434, at *6 (S.D. Fla. Aug. 25, 2020) (prior Florida conviction for "sale of cocaine" "qualifies as a felony drug offense under § 841(b)(1)(C)"), *adopted by* 2020 WL 5500781 (S.D. Fla. Sept. 11, 2020). Thus, Mr. Johnson fails to show either deficient performance or prejudice from counsel's failure to challenge the enhancement.

---

[8] Each conviction arose from the Sixth Judicial Circuit Court in Pinellas County. (Crim. Doc. 80 at 3).

## IV.   Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Johnson's motion to vacate under § 2255 (Civ. Docs. 5, 6) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Johnson, to **CLOSE** this case, and to enter a copy of this order in the criminal case.

3. Because Mr. Johnson neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE** and **ORDERED** in Tampa, Florida, on March 23, 2026.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

- 16 -